# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| HALLMARK INDUSTRIES, INC., | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| v. | ) No. 4:18-cv-0236-DGK |
| HALLMARK LICENSING, LLC, | ) |
| Defendant/Counterclaim Plaintiff. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises from a long-running dispute over trademarks. Plaintiff Hallmark Industries, Inc. ("Plaintiff"), is a New Jersey corporation engaged in the manufacture, marketing, sale, and wholesale distribution of jewelry. Defendant Hallmark Licensing, LLC ("Defendant"), is a wholly owned subsidiary of Hallmark Cards, Inc., which owns and licenses various marks that include the HALLMARK mark and Crown logo.

Plaintiff is appealing a decision of the Trademark Trial and Appeal Board ("TTAB") denying Plaintiff's applications to use two trademarks, HALLMARK and HALLMARK925, on its jewelry because the marks were likely to be confused with two of Defendant's registered marks, HALLMARK DIAMONDS and HALLMARK RINGS. Plaintiff argues the TTAB's ruling is incorrect because it actually owns the HALLMARK DIAMONDS and HALLMARK RINGS marks. Plaintiff is suing for an order vacating the TTAB's decision and a declaratory judgment that it owns the HALLMARK DIAMONDS and HALLMARK RINGS marks. Plaintiff is also suing Defendant for various related tort and infringement claims.

Defendant denies the allegations and seeks a declaratory judgment that it is the rightful owner of the HALLMARK DIAMONDS and HALLMARK RINGS trademarks. Defendant has also filed counterclaims for trademark infringement, dilution, and common law unfair competition.

Now before the Court are the parties' cross motions for partial summary judgment (Docs. 92, 95). Because the undisputed material facts demonstrate Defendant owns the HALLMARK DIAMONDS and HALLMARK RINGS marks, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

**Summary Judgment Standard**

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party may resist summary judgment by asserting affirmative defenses, but it must support these defenses with specific facts. *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co.*, 847 F.3d 594, 601 (8th Cir. 2017).

**Material Undisputed Facts**

For purposes of resolving this motion, the Court finds the material undisputed facts to be as follows.[1]

Defendant Hallmark Licensing, LLC is a wholly owned subsidiary of Hallmark Cards, Incorporated. Defendant owns and licenses a large portfolio of marks, including the iconic HALLMARK mark and Crown logo, in the United States.

---

[1] The Court has limited the facts to those that are undisputed and material to the pending summary judgment motions. The Court has excluded legal conclusions, argument presented as fact, and proposed facts that are not properly supported by admissible evidence. The Court has included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court notes Plaintiff failed to properly controvert most of Defendant's proposed facts, and the Court excluded most of Plaintiff's proposed facts because they were either disputed, immaterial to resolution of the pending motions, or not properly supported by admissible evidence.

Diastar, Inc. ("Diastar") was a New York corporation wholly owned by Pramod Jain and his brother, Pradip Jain. Diastar was in the business of selling jewelry in the U.S. wholesale market for subsequent resale. In 1988 Diastar purchased a HALLMARK trademark for jewelry, including registrations and goodwill, from Hallmark Jewelry, a company which was owned by Katy Industries. Diastar thereafter maintained common law rights in the HALLMARK mark for use in conjunction with jewelry.

In 2003, Diastar filed applications with the U.S. Patent and Trademark Office ("PTO") to register HALLMARK DIAMONDS and HALLMARK RINGS for jewelry, claiming a date of first use in 1988.

While these applications were pending, Diastar entered into a financing and loan agreement with Rosenthal & Rosenthal, Inc. ("Rosenthal"). To secure repayment of millions of dollars Rosenthal loaned to Diastar, Diastar granted Rosenthal a security interest in all of its assets, including all existing and future registered and unregistered trademarks, pending trademark applications, and goodwill associated therewith.[2] This financing and loan agreement is governed by New York law.

On February 15, 2008, Pradip Jain, as vice-president of Diastar, executed a document titled "Bill of Sale and Assignment of Trademark Application" on behalf of Diastar that purportedly

---

[2] The Security Agreement states Diastar granted Rosenthal a security interest in "all personal property of the Debtor [Diastar], including the following, all whether now owned or hereafter acquired or arising and wherever located: . . . (xv) general intangibles, of every kind and description, including . . . patents and patent, copyrights, **trademarks** . . . [and] **trademark applications** . . ." Doc. 93-12 ¶ 1 (emphasis added). Granted, Diastar contemporaneously executed a Trademark Security Agreement that specifically gave Rosenthal a security interest in the DIASTAR trademark. But by its terms, the Trademark Security Agreement was meant to give Rosenthal a document it could use to confirm its interest in the DIASTAR mark and record this interest in the PTO. *See* Doc. 106-3 at 1. The document was not meant to be an exclusive list of marks pledged as security. On the contrary, the Trademark Security Agreement explicitly states that "[a]ll rights and remedies herein granted to the Lender shall be *in addition to* any rights and remedies granted to the Lender under the Loan Documents. In the event of any inconsistency between this Agreement and the Financing Agreement, the language of the Financing Agreement shall control." *Id*. ¶ 11 (emphasis added).

3

assigned the HALLMARK DIAMONDS and HALLMARK RINGS marks and related applications, together with all goodwill associated therewith, to Monica Jain (Pradip Jain's spouse) and Anita Jain (Pramod Jain's spouse). This purported assignment was made without Rosenthal's knowledge, approval, or consent,[3] and the purported assignment was not recorded with the PTO until September 4, 2012.

On March 17, 2008, Pradip Jain, as vice-president of Diastar, filed for Chapter 11 bankruptcy protection for Diastar in the U.S. District Court for the District of New Jersey.[4] Diastar did not list either the HALLMARK mark as an asset in its bankruptcy schedules, or the February 15, 2008, purported assignment of the HALLMARK RINGS and HALLMARK DIAMONDS marks (and related applications) from Diastar to Anita Jain and Monica Jain.

A month later, on April 23, 2008, Plaintiff Hallmark Industries, Inc. was incorporated in New Jersey. It sells jewelry products wholesale to retailers. The Jain brothers' wives each own 50 percent of the company. Initially, Monica Jain's husband, Pradip Jain, was Plaintiff's president. In 2016, Monica Jain became president. Diastar never transferred its common law rights in the HALLMARK mark for use in conjunction with jewelry to Plaintiff. Plaintiff, however, alleges that Diastar assigned its trademark applications for the HALLMARK Marks (HALLMARK, HALLMARK DIAMONDS, and HALLMARK RINGS) to Plaintiff.

As a secured creditor, Rosenthal filed a Proof of Claim, and the Bankruptcy Court allowed the claim, deeming it a first priority, secured lien on all of Diastar's assets, up to $5,754,117.08. This claim survived Diastar's Chapter 7 bankruptcy proceedings. Diastar never repaid its debt to

---

[3] The Court holds Pradip Jain's deposition testimony that Rosenthal somehow "gave [Diastar] permission to transfer these applications for rings and diamonds to [his] wife and sister-in-law," is inadmissible hearsay. Even if Pradip Jain's testimony on this point were somehow admissible, the Security Agreement expressly provides that Diastar could not assign any collateral, such as a trademark or trademark application, without Rosenthal's written consent, and no such written consent was ever given.

[4] The Chapter 11 bankruptcy was later converted to a Chapter 7 bankruptcy.

4

Rosenthal in full, and the outstanding unpaid balance due to Rosenthal was not released or forgiven. Rosenthal maintained its security interest, and it regularly filed UCC continuations through April 2014.

The HALLMARK DIAMONDS and HALLMARK RINGS marks were registered to Diastar on January 4, 2011, both claiming a date of first use in 1988. On April 24, 2008, the day after Plaintiff was incorporated, Plaintiff filed an application with the PTO to register HALLMARK in class 14[5] for use in conjunction with a wide variety of jewelry items.[6] The HALLMARK application claimed April 23, 2008 (the date Plaintiff was incorporated), as the date of first use.

On February 9, 2009, Plaintiff filed an application with the PTO to register HALLMARK925 in class 14 for use in conjunction with similar jewelry items.[7] The

---

[5] International Class 14 is a class of trademark registration that includes jewelry.

[6] These items were: Beads for use in the manufacture of jewelry; Bracelets; Bronze jewelry; Brooches; Charms; Costume jewelry; Diamond jewelry; Gemstone jewelry; Identification bracelets; Jewelry; Jewelry and imitation jewelry; Jewelry boxes; Jewelry boxes not of metal; Jewelry boxes of metal; Jewelry boxes of precious metal; Jewelry cases; Jewelry cases not of precious metal; Jewelry cases of precious metal; Jewelry caskets; Jewelry caskets of precious metal; Jewelry chains; Jewelry findings; Jewelry for attachment to clothing; Jewelry for the head; Jewelry in the nature of armbands; Jewelry organizers; Jewelry pins for use on hats; Jewelry ring holders; Jewelry to be affixed to bikinis; Jewelry watches; Jewelry, namely, amulets; Jewelry, namely, crosses; Jewelry, namely, precious metal plated real leaves and flowers; Lapel pins; Leather jewelry and accessory boxes; Metal wire for use in the making of jewelry, namely, jewelry cable; Pet jewelry; Pins being jewelry; Plastic bracelets in the nature of jewelry; Rings; Rings being jewelry; Watches and jewelry; Watches, clocks, jewelry and imitation jewelry.

[7] These items were: Beads for use in the manufacture of jewelry; Body jewelry; Bracelets; Bronze jewelry; Brooches; Charms; Clocks and watches; Costume jewelry; Dials for clock-and-watch-making; Diamond jewelry; Gemstone jewelry; Gold; Gold alloy ingots; Gold and its alloys; Gold ingots; Gold, unworked or semi-worked; Identification bracelets; Jewellery and watches; Jewellery [sic], clocks and watches; Jewelry; Jewelry and imitation jewelry; Jewelry boxes; Jewelry boxes not of metal; Jewelry boxes of metal; Jewelry boxes of precious metal; Jewelry cases; Jewelry cases not of precious metal; Jewelry cases of precious metal; Jewelry caskets; Jewelry caskets of precious metal; Jewelry chains; Jewelry findings; Jewelry for attachment to clothing; Jewelry for the head; Jewelry in the nature of armbands; Jewelry organizers; Jewelry pins for use on hats; Jewelry ring holders; Jewelry to be affixed to bikinis; Jewelry watches; Jewelry, namely, amulets; Jewelry, namely, anklets; Jewelry, namely, crosses; Jewelry, namely, precious metal plated real leaves and flowers; Jewelry, namely, stone pendants; Lapel pins; Leather jewelry and accessory boxes; Metal wire for use in the making of jewelry, namely, jewelry cable; Pet jewelry; Pins being jewelry; Plastic bracelets in the nature of jewelry; Rings; Rings being jewelry; Silver; Silver alloy ingots; Silver and its alloys; Silver ingots; Stainless steel jewelry bracelets; Watch bands; Watch bands and straps; Watch bracelets; Watch chains; Watch crowns; Watches; Watches and clocks; Watches and jewellery [sic]; Watches and jewelry; Watches, clocks, jewelry and imitation jewelry, all of the foregoing being made in significant part from sterling silver, namely, 92.5% of pure silver.

HALLMARK925 application claimed May 30, 2008, as the date of first use and contained no limitations regarding trade channels or classes of customers.

On March 6, 2012, the PTO trademark examiner issued an office action refusing Plaintiff's application to register HALLMARK because it was confusingly similar to the registered marks HALLMARK DIAMONDS and HALLMARK RINGS. In response, on September 4, 2012, Plaintiff filed documents with the PTO stating that the HALLMARK DIAMONDS and HALLMARK RINGS marks had been assigned by Diastar in February 2008 to Monica Jain and Anita Jain, and that Plaintiff had been using these trademarks for the previous two years with permission from Monica Jain and Anita Jain.

On September 27, 2012, the trademark examiner again rejected Plaintiff's applications to register HALLMARK because Plaintiff's September 4, 2012, response did not establish that the applicant Plaintiff and the newly registered owners of the HALLMARK DIAMONDS and HALLMARK RINGS marks (Anita and Monica Jain) constituted a "single source," which would be necessary to avoid a likelihood of confusion.

On October 1, 2012, Monica Jain and Anita Jain executed a document titled "Bill of Sale and Assignment of Trademark Application" that purported to assign the HALLMARK DIAMONDS and HALLMARK RINGS marks, and related registrations, to Plaintiff. This purported assignment was made without Rosenthal's knowledge, approval, or consent.

For the same reasons it initially refused to register HALLMARK, the PTO twice refused Plaintiff's application for HALLMARK925. During these office actions, Plaintiff acknowledged that the word HALLMARK is the dominant component among all four marks. The HALLMARK and HALLMARK925 applications were eventually allowed and published for opposition.

Defendant timely opposed each of Plaintiff's applications to register HALLMARK and HALLMARK925.

Plaintiff continued to use the HALLMARK DIAMONDS and HALLMARK RINGS marks on jewelry until 2014, at which time Plaintiff ceased using the marks until the proceedings before the TTAB concluded and ownership of the marks was resolved.

In August 2014, apparently after receiving inquiries from Defendant, Rosenthal foreclosed on its security interest in the HALLMARK DIAMONDS and HALLMARK RINGS marks and conducted a private foreclosure sale under Article 9 of the Uniform Commercial Code of the marks, including the federal registrations therefor, and all associated goodwill therein. Defendant purchased the HALLMARK DIAMONDS and HALLMARK RINGS marks, including the federal registrations therefor and all the goodwill associated therewith, at the private foreclosure sale. Pursuant to the sale agreement, Rosenthal assigned all the rights in the HALLMARK DIAMONDS and HALLMARK RINGS marks, including the registrations therefor, all the goodwill associated therewith, and the right to pursue past and future infringement to Defendant. Rosenthal's assignment to Defendant was recorded with the PTO.

Defendant, through its licensees, is currently using the HALLMARK DIAMONDS and HALLMARK RINGS marks in commerce, including national and online retailers such as JCPenney and Amazon. Defendant's licensees promote jewelry under the HALLMARK family of marks, including the HALLMARK DIAMONDS mark, at major industry trade shows, including annual shows in Las Vegas and Hong Kong. Jewelry products offered under the HALLMARK DIAMONDS and HALLMARK RINGS marks are promoted in fliers mailed to consumers across the country. Since 2015, wholesale revenues of jewelry products sold by unaffiliated third-party licensees of Defendant under the HALLMARK DIAMONDS and HALLMARK RINGS marks

7

has been millions of dollars. The retail outlets for jewelry sold under the HALLMARK DIAMONDS or HALLMARK RINGS marks include JCPenney, Kohl's, Fred Meyer Jewelers, Amazon.com, jcpenney.com, kohls.com, fredmeyer.com, Hallmark.com, and some Hallmark Gold Crown stores.

Survey evidence reveals that the brand/company name HALLMARK has achieved a high level of national fame and has been famous for well over 10 years. In the un-aided brand/company name recall portion of the survey, 78% of respondents identified HALLMARK as a first response in the greeting card category. This was the highest frequency for first response of any brand or company in any of the comparison categories. In the brand recognition portion of the survey, 95% of respondents indicated awareness of the HALLMARK brand/company name and then correctly identified products associated with Hallmark Cards, Incorporated and its affiliates. The HALLMARK mark is most closely associated with greeting cards. Out of 945 respondents who indicated recognition of Hallmark, not a single one associated it with jewelry products.

Defendant owns a number of federal registrations that claim a first use date prior to 2008 for the HALLMARK mark, including registrations for the HALLMARK word mark (such as Registration No. 380,596 claiming a date of first use in 1925) and variations of the familiar HALLMARK crown design mark for use in conjunction with a number of goods and services. Defendant also owns a number of registrations that claim a date of first use prior to 2008 and that share the common element HALLMARK for use in conjunction with goods and services, including jewelry.

In addition to the rights evidenced by the above registrations, Defendant is the owner of common-law trademark rights in HALLMARK and other marks that share the common element

HALLMARK. Such marks have been used on jewelry and jewelry products since long before 2008, starting as early as the 1940s.

Each year Hallmark Cards and its subsidiaries spend tens of millions of dollars advertising and promoting HALLMARK branded products and services. Products branded with the HALLMARK marks owned by Hallmark Cards or its subsidiaries (including in the United States Hallmark Licensing) are available worldwide in more than 100 countries and 100,000 retail outlets. The consolidated net revenue of Hallmark Cards, Incorporated, and its subsidiaries, exceeds $4 billion annually, a significant portion of which is attributable to wholesale revenue from products branded with Defendant's HALLMARK-based marks. Defendant itself spends hundreds of thousands of dollars annually to specifically market and advertise jewelry products bearing its HALLMARK based marks. The total wholesale revenues since 2011 for all jewelry products sold by Defendant's unaffiliated third-party licensees under the HALLMARK-based marks has been many millions of dollars.

Photographs of Plaintiff's jewelry products bearing the HALLMARK and HALLMARK925 marks are included with the Amended Complaint. Additional photographs of Plaintiff's jewelry products, including photographs of products marked with HALLMARK and a crown design, were included in the applications for registration of the HALLMARK and HALLMARK925 marks.

Plaintiff claims it has sold jewelry products to online retailers, Seventh Avenue and SETA, and national retailer, Costco. Plaintiff used the HALLMARK DIAMONDS and HALLMARK RINGS marks on jewelry up to 2014. Plaintiff does not currently have possession of records that would allow it to distinguish sales of products under HALLMARK-based marks.

Pradip Jain has asserted that, after the conclusion of this lawsuit, Plaintiff intends to use the marks HALLMARK, HALLMARK925, HALLMARK RINGS, and HALLMARK DIAMONDS in commerce.

On May 3, 2017, the TTAB granted Defendant's motion for summary judgment on Defendant's likelihood of confusion claim, sustained Defendant's oppositions, and refused Plaintiff registration of HALLMARK and HALLMARK925.

## Discussion

### I. Defendant owns the HALLMARK DIAMONDS and HALLMARK RINGS marks.

The Court holds Defendant owns the HALLMARK DIAMONDS and HALLMARK RINGS marks because it purchased them in a lawful foreclosure sale from Rosenthal in 2014. In 2006, Diastar granted Rosenthal a security interest in *all* of Diastar's intellectual property, including Diastar's registered and unregistered trademarks (then existing or in the future), its pending trademark applications, and all goodwill associated therewith. This security interest attached and was perfected in 2006 when Rosenthal made the loan.[8] During Diastar's bankruptcy, Rosenthal filed a proof of claim, which the bankruptcy court allowed, deeming it a first priority, secured lien on all of Diastar's assets up to $5,754,117.08. Diastar never repaid this debt in full, nor did Rosenthal release or forgive the debt. In 2014, Rosenthal foreclosed on its security interest in the HALLMARK DIAMONDS and HALLMARK RINGS marks, and sold them to Defendant in partial satisfaction of Diastar's debts.

Diastar's purported assignment of these marks to Monica Jain and Anita Jain a month before it entered bankruptcy, and then the subsequent purported assignment by the Jain wives to

---

[8] The Court holds Rosenthal's security interest remained perfected when Diastar purportedly assigned the marks to Monica Jain and Anita Jain in 2008, through when they purportedly assigned them to Plaintiff, and through 2014 when Rosenthal foreclosed.

10

Plaintiff in 2012 is unavailing. These purported assignments were made without Rosenthal's written consent, approval, or agreement, and thus the marks remained subject to Rosenthal's security interest. *See* New York Uniform Commercial Code § 9-135(a)(1) ("a security interest continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest").

As a result of the foreclosure sale, Rosenthal assigned the marks to Defendant. The assignment was recorded with the PTO. Accordingly, Defendant has owned the registrations for the HALLMARK DIAMONDS and HALLMARK RINGS marks for jewelry since August 2014, with a date of first use in 1988.

Since acquiring the marks, Defendant has maintained the registrations for these marks. The registration certificates, together with the assignment records, constitute prima facie evidence of Defendant's ownership of the marks. 15 U.S.C. § 1057 ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate . . ..").

Plaintiff's argument that since *Rosenthal* never used the marks, the marks have been abandoned, is meritless. Obviously, Rosenthal never owned the marks; what it had was a perfected security interest in the marks, which it maintained until it lawfully foreclosed on them in 2014. The marks were never abandoned because they were in continuous use by Plaintiff from 2008 to 2014 until Defendant purchased them at the foreclosure sale, at which time Defendant began using them.

11

**II.   Defendant's ownership of the HALLMARK DIAMONDS and HALLMARK RINGS marks entitles it to summary judgment on Plaintiff's remaining claims and Defendant's request for a declaratory judgment.**

Given the Court's holding the Defendant owns the HALLMARK DIAMONDS and HALLMARK RINGS marks, the Court grants Defendant's summary judgment motion in its entirety.

Defendant is entitled to summary judgment on Plaintiff's Count I, which seeks vacatur of the TTAB's decision. The TTAB correctly ruled that Defendant owns these marks, and that Plaintiff's applications to use the HALLMARK and HALLMARK925 trademarks should be denied because Plaintiff's use of these marks was likely to cause confusion with Defendant's registered marks HALLMARK DIAMONDS and HALLMARK RINGS.

Defendant is entitled to a declaratory judgment that Defendant's rights to HALLMARK DIAMONDS and HALLMARK RINGS marks, including Registration Nos. 3,898,292 and 3,898,293, are superior to any rights held by Plaintiff.

Defendant is entitled to summary judgment on Plaintiff's Count IV for false representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The first element of such a claim is that the plaintiff must prove it owns or has rights in a protectable trademark or claim. *Cmty. of Christ Copyright Corp. v. Devon Park Restoration*, 683 F. Supp. 2d 1006, 1013 (W.D. Mo. 2010). Since Plaintiff does not own the trademarks at issue, Defendant is entitled to summary judgment.

Similarly, Defendant is entitled to summary judgment on Plaintiff's Count VI for common law unfair competition, because in order to maintain claim for common law unfair competition, the plaintiff must own the mark. *Id.* at 1009-10.

Finally, Defendant is entitled to summary judgment on its counterclaim Count II for infringement of registered trademark rights. In order to prevail on this claim, Defendant must prove that it "owns a protectable trademark or tradename and that [Plaintiff] has used, in commerce, a similar mark that is likely to cause confusion as to the source of [Plaintiff's] goods or the involvement or association of" Defendant's business. *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990, 997 (W.D. Mo. 1986). The record establishes that Defendant owns the HALLMARK DIAMONDS and HALLMARK RINGS marks. Further, Plaintiff has used the HALLMARK, HALLMARK DIAMONDS, HALLMARK RINGS, and HALLMARK925 marks on jewelry to some extent, has sold jewelry under one or more of these marks to online retailers, and Pradip Jain has asserted that, after the conclusion of this lawsuit, Plaintiff intends to use these marks in commerce. Thus, the only remaining question is whether Plaintiff's use of the marks is likely to cause confusion as to the source of goods or whether Plaintiff is somehow associated with Defendant.

The Eighth Circuit has held that a district court may decide the likelihood of confusion issue on summary judgment. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 840 F.3d 971, 980 (8th Cir. 2016). A court considers six factors, adopted from *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1991), in evaluating the likelihood of confusion:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1053 (8th Cir. 2005). "Under *SquirtCo,* no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Id*. at 1054. "When identical marks are used in the

13

same geographic area for the same class of goods or services, likelihood of confusion is presumed." *Cmty. of Christ*, 634 F.3d at 1010 (internal quotation omitted).

In its opening brief, Defendant established four of these factors and demonstrated that given the weight of these factors, it did not have to establish actual confusion to establish a likelihood of confusion. See *Warner Bros. Entm't*, 840 F.3d at 981. In its responsive briefing, Plaintiff did not contest any of this analysis, instead "doubling down" on its claim that it owns the HALLMARK DIAMONDS and HALLMARK RINGS marks. By failing to contest Defendant's analysis, Plaintiff has conceded the likelihood of confusion issue. Since likelihood of confusion is the last element of this claim, Defendant is entitled to summary judgment on this counterclaim and an injunction prohibiting Plaintiff from using any mark bearing the word HALLMARK.

**Conclusion**

For the reasons discussed above, Defendant's motion (Doc. 92) is GRANTED and Plaintiff's (Doc. 95) is DENIED. The Court enters summary judgment in Defendant's favor on Plaintiff's remaining claims, which are Counts I, II, IV, and VI, and Defendant's counterclaim Counts I and II.

The Court holds Defendant Hallmark Licensing, LLC, is entitled to a declaratory judgement that Defendant's rights to HALLMARK DIAMONDS and HALLMARK RINGS marks, including Registration Nos. 3,898,292 and 3,898,293, are superior to any held by Plaintiff. The Court further enjoins Plaintiff from using any mark bearing the word HALLMARK.

Finally, the Court orders the parties to meet and confer on a revised joint scheduling order to be submitted on or before October 11, 2019.

**IT IS SO ORDERED.**

Date:  September 27, 2019   /s/ Greg Kays
  GREG KAYS, JUDGE

UNITED STATES DISTRICT COURT